**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                 No. CR 15-2223 JB

TRINIDAD GALLEGOS

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Objection to Presentence Investigation Report, filed July 15, 2016 (Doc. 48)("Objections"). The Court held a sentencing hearing on August 24, 2016. The primary issues are: (i) whether, under § 2K2.1(6)(B) of the United States Sentencing Guidelines ("U.S.S.G."), a defendant must use a firearm as an "instrumentality of committing other offenses" for the firearm's possession to be "connected with" the other offenses; and (ii) whether the Court should apply a 4-level enhancement to Defendant Trinidad Gallegos' offense level under § 2K2.1(6)(B), because he possessed a shotgun in connection with other felony offenses. The Court concludes that § 2K2.1(6)(B) does not require that a firearm be used as an instrumentality in committing other offenses for that section's enhancement to apply. Nevertheless, the Court declines to apply the enhancement, because Gallegos' possession of a shotgun did not make easier or embolden his commission of the other felony offenses, and thus, the shotgun was not possessed "in connection with" those offenses. Accordingly, the Court will overrule the United States' Objections.

# FACTUAL BACKGROUND

In a Plea Agreement, filed November 19, 2015 (Doc. 26)("Plea Agreement"), Gallegos admitted the following facts:

> On August 20, 2014, police officers showed up at my house at 5115 Hattiesburg Ave NW, in Albuquerque, in Bernallilo [sic] County, in the District of New Mexico. I, TRINIDAD GALLEGOS, pulled up in my driveway in my tow truck, and in my truck I knowingly possessed a loaded Mossberg model 500A shotgun, serial number L746500, loaded with 12 gauge shotgun shells. I saw BCSO officers pointing guns at me and quickly backed out of my driveway. Just as I reached the street, another vehicle, which I now know was driven by an HSI officer, collided with me. One of the BCSO officers shot at me, and a bullet entered and exited my left thigh, and entered my right thigh. After being shot, I continued to try to get away, driving the tow truck backwards down the street, and I crashed into another vehicle. I got out of the tow truck and ran away, breaking into people's homes to try to escape the police.
>
> Prior to August 20, 2014, I had been convicted of possession with intent to distribute marijuana, domestic violence, forgery, possession with intent to distribute methamphetamine, uttering counterfeit securities, forgery, and being a felon in possession of a firearm, so I know I was not allowed to possess the shotgun on August 20, 2014.
>
> I have been informed that police examined the firearm and ammunition and determined that they both meet the statutory definitions of a firearm and ammunition. I have also learned that the firearm and ammunition were manufactured outside the state of New Mexico and that the firearm and ammunition therefore had to have been previously shipped or transported in interstate commerce to be physically present and in my possession on August 20, 2014, in Bernalillo County, in the District of New Mexico.

Plea Agreement at 3-4 (paragraph lettering and bolding omitted).

# PROCEDURAL BACKGROUND

On June 24, 2015, a grand jury returned a two-count indictment against Gallegos. See Indictment at 1, filed June 24, 2015 (Doc. 1)("Indictment"). Count I charges Gallegos with using a deadly or dangerous weapon, i.e., a tow truck, to forcibly assault, resist, oppose, impede, intimidate, and interfere with Homeland Security Investigations Special Agent Brett Finn in his performance of official duties, in violation of 18 U.S.C. §§ 111(a)(1) and (b). See Indictment at 1. Count II charges

Gallegos with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). See Indictment at 1-2. The Indictment also includes a forfeiture allegation that Gallegos shall forfeit the firearm and ammunition involved in the felon-in-possession offense in Count II, pursuant to 18 U.S.C. § 924(d)(1). See Indictment at 2. On November 19, 2015, pursuant to a plea agreement, Gallegos entered a guilty plea as to Count II. See Plea Agreement at 2. In light of evidence that Finn intentionally collided with Gallegos to prevent him from fleeing the scene, the Plea Agreement stipulates that the United States will not attempt to prove that Gallegos "was solely responsible for the collision which is the basis of Count I of the indictment[.]" Plea Agreement at 5.

The United State Probation Office ("USPO") filed a Presentence Investigation Report on June 24, 2016. See Presentence Investigation Report at 1, filed June 24, 2016 (Doc. 41-1)("PSR"). In the PSR, the USPO calculates a base offense level of 14, with a 2-level enhancement under U.S.S.G. § 3C1.2 for obstruction of justice, a 2-level reduction under § 3E1.1(a) for acceptance of responsibility, and a 1-level reduction under § 3E1.1(b) for assisting authorities in investigating or prosecuting the case, for a total offense level of 13. See PSR at 8-9. The PSR calculates a criminal history category of V, see PSR at 19, and a guideline imprisonment range of 100 to 125 months, see PSR 32. In light of the Plea Agreement and pursuant to rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the PSR recommends a sentence of 96 months. See PSR at 35.

The United States filed its Objections to the PSR on July 15, 2016. See Objections at 1. In its Objections, the United States asserts that Gallegos "possess[ed] [a] shotgun in connection with other felonies, and should receive an offense level upgrade therefor." Objections at 1. The United States identifies three felonies with which Gallegos' shotgun possession was allegedly connected. See Objections at 2-3. First, the United States avers that, while Gallegos "was possessing the instant shotgun and fleeing from law enforcement, he drove his truck into a truck driven by Special Agent

Brett Finn . . . ." Objections at 2. The United States notes that Count I -- the felony assault charge based on this alleged conduct -- has been dismissed, but maintains that, "[f]or purposes of U.S.S.G. § 2k2.1(6)(B), . . . Defendant committed that assault[.]" Objections at 2. Second, the United States contends that "[t]he fleeing from law enforcement itself, while driving the tow truck and after being given signals to stop, constituted the New Mexico state felony of Aggravated Fleeing from Law Enforcement[.]" Objections at 2. This state felony, the United States asserts, "was committed while possessing the instant shotgun and in furtherance of Defendant's desire not to be caught with the shotgun." Objections at 2. Third, the United States notes that, while Gallegos was fleeing on foot, he "broke into numerous homes in his . . . quest to avoid capture by the police." Objections at 2. The United States contends that "[t]he breaking and entering into those homes violated NMSA § 30-14-8, another state felony." Objections at 2. The United States concludes that, because Gallegos "committed that Breaking and Entering felony as part of his continued attempt to avoid capture for the illegal possession of the shotgun, the break-ins were connected to the possession of that shotgun, and should result in an offense level increase for the gun count under U.S.S.G. § 2K2.1(6)(B)." Objections at 2-3.

The United States notes that the USPO "takes the position that because the shotgun was not used to drive the truck, and was not used to facilitate the physical break-in, the offenses are not connected." Objections at 3. The United States "disagrees, and takes the position that the firearm need not be used as an instrumentality of committing the other offenses for its possession to be connected to the other offenses under U.S.S.G. § 2K2.1(6)(B)." Objections at 3. Thus, the United States "requests the Court find that the commission of those other felonies described above was, by a preponderance of the evidence, connected to the illegal possession of the shotgun." Objections at 3.

The USPO responded on August 24, 2016. See Second Addendum to the Presentence Report at 1, filed August 24, 2016 (Doc. 53)("Addendum"). The USPO avers that an offense level upgrade under § 2K2.1(6)(B) applies only "'if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively.'" Addendum at 2 (quoting U.S.S.G. § 2K2.1, Application Note 14(A)). First, with respect to the alleged felony assault, the USPO asserts that the Plea Agreement precludes an enhancement, because it provides that the United States "will not attempt to prove the defendant's conduct was the sole cause of his collision with the HSI officer or other law enforcement vehicle . . . ." Addendum at 2. As to the second alleged felony offense, i.e., aggravated fleeing from law enforcement, the USPO agrees that, because Gallegos was in possession of a firearm during flight, "it appears a two [sic[1]] level enhancement is warranted . . . ." Addendum at 2. Finally, regarding the breaking and entering allegation, the USPO asserts that an enhancement is not warranted, because Gallegos discarded the firearm before he entered the first house, and thus, "the firearm did not facilitate or embolden him in any way in those actions." Addendum at 2-3.

**LAW REGARDING U.S.S.G. § 2K2.1(b)(6)**

U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level for a sentence under § 2K2.1 "if the defendant used or possessed any firearm or ammunition in connection with another felony offense." Application Note 14 to § 2K2.1 specifies that a firearm's use or possession is "in connection with" a different felony "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." The United States Court of Appeals for the Tenth Circuit has stated that the "plain and commonly understood meaning of 'facilitate' is to

---

[1] U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level and not a 2-level enhancement.

make easier." United States v. Marrufo, 661 F.3d 1204, 1207 (10th Cir. 2011)(citing United States v. Gandy, 36 F.3d 912, 914 (10th Cir. 1994)(recognizing that "facilitate" means "to make easier"); Black's Law Dictionary 668 (9th ed. 2009)(defining "facilitate" as "[t]o make the commission of a crime easier")). In United States v. Marrufo, the Tenth Circuit explained:

> In Smith v. United States, 508 U.S. 223 . . . (1993), on which Application Note 14(A) is based, U.S.S.G. app. C amend. 691, the Supreme Court interpreted the term "in relation to." Id. at 238 . . . . It stated: "the gun at least must facilitate, or have the potential of facilitating, the [other] offense" and "its presence or involvement cannot be the result of accident or coincidence." Id. (quotations and brackets omitted); see also United States v. Taylor, 413 F.3d 1146, 1154 (10th Cir. 2005); United States v. Constantine, 263 F.3d 1122, 1126 (10th Cir. 2001).

United States v. Marrufo, 661 F.3d at 1207-08.

The Tenth Circuit has held on several occasions that physical proximity between a weapon and narcotics can be sufficient to satisfy the requirements of U.S.S.G. § 2K2.1(b)(6). See, e.g., United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998); United States v. Gomez-Arrellano, 5 F.3d 464, 467 (10th Cir. 1993). In United States v. Bunner, for example, the Tenth Circuit reasoned that physical proximity can establish a nexus between a handgun and a drug trafficking offense: "Handguns are widely recognized as a tool of the drug dealers['] trade. Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)."[2] 134 F.3d at 1006. Similarly, in United States v. Pacheco, 2014 WL 3421063 (D.N.M. 2014)(Browning, J), the Court applied the 4-level enhancement when firearms were found in a trailer that contained heroin and digital scales. See 2014 WL 3421063, at *13-14.

The United States Court of Appeals for the Eighth Circuit has observed that, when a person ventures into public with a firearm and even a small amount of drugs, "there are many ways in which

---

[2]U.S.S.G. § 2K2.1(b)(5) is now U.S.S.G. § 2K2.1(b)(6). See U.S.S.G. § 2K2.1.

the weapon can facilitate the drug offense and dangerously embolden the offender." United States v. Regans, 125 F.3d 685, 687 (8th Cir. 1997). The Eighth Circuit has also held that a firearm facilitates or has the potential to facilitate felony-drug possession in the same manner as felony-drug trafficking -- by protecting a defendant or his drugs. See United States v. Bell, 310 F.3d 604, 605-606 (8th Cir. 2002)(per curiam). The Tenth Circuit reached a similar conclusion in United States v. Fent, 199 F. App'x 724, 727 (10th Cir. 2006)(unpublished)(holding that the enhancement applied where the defendant possessed a firearm in connection with possessing methamphetamine). In United States v. Fent, a deputy sheriff pulled the defendant over for speeding, and then arrested him after he failed to produce a driver's license or proof of insurance, and a database check of his name and social security number revealed his license was suspended. See 199 F. App'x at 725-26. The deputy impounded the defendant's truck, and discovered a small amount of methamphetamine and a firearm in a black bag in the defendant's truck during an inventory search. See 199 F. App'x at 726. After a jury trial, the defendant was found guilty of being a felon in possession of a firearm, but was never charged with any drug offense. See 199 F. App'x at 726. Nevertheless, the district court found, by a preponderance of the evidence, that the firearm was possessed in connection with felony possession of methamphetamine. See 199 F. App'x at 727. As the district court noted, "'the availability of the gun in such close proximity to the methamphetamine was sufficient evidence of a connection between the firearm and the possession of methamphetamine, which is a felony offense in the state of Oklahoma.'" 199 F. App'x at 727 (quoting with approval the district court). The Tenth Circuit affirmed. See 199 F. App'x at 727.

There is no requirement that a certain amount of narcotics be recovered for the enhancement under U.S.S.G. § 2K2.1(b)(6) to apply. See United States v. Condren, 18 F.3d 1190, 1999 (5th Cir. 1994)(holding that the 4-level enhancement "may be based on any felony, including, as here, felony

possession of a small amount of drugs"); United States v. Cunningham, 2008 WL 6049940, at *8 (D.N.M. Oct. 29, 2008)(Browning, J.). Accordingly, courts have applied the 4-level enhancement in cases where small amounts of narcotics were recovered. See, e.g., United States v. Washington, 340 F.3d 222, 231 (5th Cir. 2003)(rejecting the defendant's argument that "the quantity of drugs seized was too minute for anything other than personal use and that the government failed to establish a connection between the firearms and the drugs," because a controlling Fifth Circuit case -- United States v. Condren, 18 F.3d 1190 (5th Cir. 1994) -- held that "a defendant possessing the firearm 'in connection with' either drug possession or distribution triggered the sentence enhancement"); United States v. Green, 255 F. App'x 473, 474 (11th Cir. 2007)(unpublished)(upholding enhancement for having firearm and a small amount of drugs for personal use); United States v. Moran-Paz, 35 F. App'x 93, 93-94 (4th Cir. 2002)(unpublished)(upholding enhancement based upon finding that defendant carried firearm to protect his small amount of drugs).

In United States v. Justice, 679 F.3d 1251 (10th Cir. 2012), the Tenth Circuit stated that it agrees "with several other circuits that have held that possession of a firearm may facilitate an offense by emboldening the possessor to commit the offense." 679 F.3d at 1255. In that case, the defendant "was carrying methamphetamine on his person," the "firearms were within easy reach, and they were loaded"; thus, the Tenth Circuit concluded that "[a] reasonable person could find that the firearms gave him a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force." 679 F.3d at 1255. The Tenth Circuit cautioned, however, that "emboldenment is not always present when firearms are near drugs." 679 F.3d at 1256 (citing United States v. Jeffries, 587 F.3d 690, 691-95 (5th Cir. 2009)(rejecting emboldenment theory when the defendant took a gun from another man after a violent altercation, got into his car, picked up his girlfriend, was stopped by the police almost immediately thereafter, and police found

the gun on the driver's seat and a rock of cocaine on the floor behind the seat, because, even if the cocaine belonged to the defendant, the evidence was insufficient to prove that the gun emboldened him); United States v. West, 643 F.3d 102, 115-16 (3d Cir. 2011)(rejecting emboldenment theory when marijuana found in glove compartment and revolver found in backpack in trunk of defendant's car); United States v. Smith, 535 F.3d 883, 886 (8th Cir. 2008)(holding that emboldenment theory was not applicable, because the defendant did not venture from home into public with the drugs or firearms)). The Tenth Circuit emphasized that the factual setting must support the emboldenment theory, but concluded that,

> when the defendant is out and about, with drugs on his person and a loaded firearm within easy reach, one can infer from the proximity of the weapon to the drugs is not coincidental and that the firearm "facilitated, or had the potential of facilitating," the drug offense by emboldening the possessor.

United States v. Justice, 679 F.3d at 1256.

An enhancement under § 2K2.1(b)(6) may be applied even though the felony in connection with which the firearm is possessed was not an offense for which the defendant was convicted. See United States v. Gambino-Zavala, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008). In United States v. Magallanez, 408 F.3d 672 (10th Cir. 2005), the Tenth Circuit held that, even after United States v. Booker, 543 U.S. 220 (2005), as long as the guidelines are considered advisory, facts relevant to sentencing still need be proved only by a preponderance of the evidence. See United States v. Magallanez, 408 F.3d at 684-85. See also United States v. Dalton, 409 F.3d 1247, 1252 (10th Cir. 2005)("*Booker* therefore does not render judicial fact-finding by a preponderance of the evidence per se unconstitutional.").

The Court has noted that the 4-level enhancement has four distinct elements, requiring proof that the defendant "(i) used or possessed; (ii) any firearm or ammunition; (iii) in connection with;

(iv) another felony offense." United States v. Kepler, 2012 WL 592422, at *5 (D.N.M. 2012)(Browning, J.)(citing U.S.S.G. § 2K2.1(b)(6)). In United States v. Kepler, the United States and the defendant stipulated that § 2K2.1(b)(6)'s 4-level enhancement did not apply, and the Court accepted the stipulation, because there was a lack of evidence regarding whether the defendant or some other occupant in the house owned the locked box that contained methamphetamine and a handgun. See 2012 WL 592422, at *6. The Court explained:

> Given that the Court has no ability to gather or present evidence to support a sentencing enhancement, the Court is dependent in many ways on the United States to assess the strength of its arguments and evaluate whether it can prove that a particular enhancement applies. While it is possible that the methamphetamine is attributable to Kepler, the evidence before the Court does not support a factual finding to that effect by a preponderance of the evidence. Without proof that Kepler committed another felony offense, the United States cannot establish that an enhancement under U.S.S.G. § 2K2.1(b)(6) applies.

2012 WL 592422, at *6.

## **ANALYSIS**

The primary issues are: (i) whether the 4-level enhancement under § 2K2.1(6)(B) requires that a defendant use a firearm as an "instrumentality of committing other offenses" for the firearm's possession to be "connected with" the other offenses; and (ii) whether the Court should apply a § 2K2.1(6)(B) enhancement to Gallegos' offense level, because he possessed a shotgun in connection with other felony offenses. The Court concludes that § 2K2.1(6)(B)'s 4-level enhancement does not require that a firearm be used as an instrumentality in committing other offenses. Nevertheless, the Court concludes that the enhancement does not apply, because Gallegos did not use or possess his shotgun "in connection with" other offenses. Accordingly, the Court will overrule the United States' Objections to the PSR.

I.  **SECTION 2K2.1(6)(B)'S 4-LEVEL ENHANCEMENT DOES NOT REQUIRE THAT A FIREARM BE USED AS AN INSTRUMENTALITY IN COMMITTING OTHER FELONY OFFENSES.**

U.S.S.G. § 2K2.1(b)(6) provides a 4-level enhancement to a defendant's base offense level if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." A firearm's use or possession is "in connection with" a different felony "if the firearm . . . facilitated, or had the potential of facilitating," the other felony. U.S.S.G. § 2K2.1, Application Note 14(A). The Tenth Circuit has defined "facilitate" as "to make easier," United States v. Marrufo, 661 F.3d at 1207, or to "embolden[]," United States v. Justice, 679 F.3d at 1255. Thus, § 2K2.1(b)(6) does not require a firearm's use as an instrumentality in the commission of another offense for the firearm to be connected with that offense; even the "potential of facilitating" another felony offense, i.e., by making the offense easier or by "emboldening the possessor to commit the offense," United States v. Justice, 679 F.3d at 1255, is sufficient. Accordingly, the United States is correct in urging that § 2K2.1(6)(B)'s application does not turn on whether a firearm is used as an "instrumentality of committing [] other offenses . . . ." Objections at 3.

II. **THE COURT DECLINES TO APPLY A 4-LEVEL ENHANCEMENT UNDER § 2K2.1(6)(B), BECAUSE GALLEGOS' POSSESSION OF A SHOTGUN DID NOT "MAKE EASIER" OR "EMBOLDEN" HIS COMMISSION OF THE ALLEGED OFFENSES.**

Although the United States is correct that a 4-level enhancement under § 2K2.1(6)(B) does not require a firearm's use as an "instrumentality of committing the other offenses," Objections at 3, the Court concludes that this case's facts do not warrant an enhancement under that section. The United States contends that Gallegos possessed a shotgun in connection with three felonies: (i) assault; (ii) aggravated flight from law enforcement; and (iii) breaking and entering. See Objections at 2-3. The Court will answer these allegations in turn, bearing in mind that an enhancement under § 2K2.1(6)(B) does not require a conviction for the offense alleged. See United States v. Gambino-

Zavala, 539 F.3d at 1230 n.3.  Rather, facts relevant to the enhancement need be proved only by a preponderance of the evidence.  See United States v. Magallanez, 408 F.3d at 684-85.

First, the United States notes that Gallegos possessed a shotgun when his truck collided with Special Agent Finn's truck.  See Objections at 2.  Gallegos' shotgun possession and the resulting felony assault, the United States asserts, were thus connected under § 2K2.1(6)(B).  See Objections at 2.  The Court disagrees.  As the PSR provides, there is camera and eyewitness testimony indicating that Finn intentionally collided with Gallegos to prevent him from fleeing.  See PSR at 5.  Given this evidence, the United States and Gallegos stipulated in the Plea Agreement that the "government will not attempt to prove that Defendant was solely responsible for the collision . . . ." Plea Agreement at 5.  See Objections at 2 (acknowledging this stipulation); Addendum at 2 (same). Accordingly, the Court cannot soundly conclude, by a preponderance of the evidence, see United States v. Magallanez, 408 F.3d at 684-85, that Gallegos assaulted Finn.  The United States has not generated a record sufficient for the Court to make this conclusion.  Moreover, even if the Court could make this conclusion, the United States does not argue that the shotgun somehow facilitated Gallegos' assault on Finn; the United States does not contend that Gallegos' shotgun possession "ma[d]e easier," United States v. Marrufo, 661 F.3d at 1207, or "embolden[ed]," United States v. Justice, 679 F.3d at 1255, the assault.  Thus, the Court concludes that the assault was not connected with Gallegos' shotgun possession and does not warrant a 4-level enhancement pursuant to § 2K2.1(6)(B).

Second, the United States argues that Gallegos committed felony aggravated flight from law enforcement "while possessing the instant shotgun and in furtherance of Defendant's desire not to be caught with the shotgun."  Objections at 2.  The USPO agrees that this conduct justifies a 4-level enhancement pursuant to § 2K2.1(6)(B).  See Addendum at 2.  The Court concludes, however, that

Gallegos' shotgun possession and his flight from law enforcement were not connected within § 2K2.1(6)(B)'s meaning.  Initially, there is no evidence that Gallegos' flight was motivated by a "desire not to be caught with the shotgun," Objections at 2, as the United States insists.  Regardless, Gallegos' motivation is immaterial to whether an enhancement applies under § 2K2.1(6)(B).  The relevant inquiry is not whether Gallegos' shotgun possession caused the felony offense, but whether it "ma[d]e easier," United States v. Marrufo, 661 F.3d at 1207, or "embolden[ed]," United States v. Justice, 679 F.3d at 1255, the offense.  It is possible that Gallegos' shotgun possession made easier or emboldened his flight; the preponderance of the evidence does not, however, support such an inference.  See United States v. Magallanez, 408 F.3d at 684-85.  Accordingly, the Court concludes that Gallegos' shotgun possession was not connected with his flight from law enforcement and does not justify an enhancement under § 2K2.1(6)(B).

Finally, the United States contends that Gallegos possessed a shotgun in connection with his "numerous" home break-ins while fleeing the police.  Objections at 2.  The United States reasons that the break-ins and Gallegos' shotgun possession were connected, because Gallegos "committed that Breaking and Entering felony as part of his continued attempt to avoid capture for the illegal possession of the shotgun[.]"  Objections at 2-3.  This reasoning fails to persuade the Court.  As the USPO properly notes, Gallegos discarded the shotgun before he broke into the first house.  See Addendum at 2-3.  Accordingly, the shotgun could not have "facilitated," or have "had the potential of facilitating," U.S.S.G. § 2K2.1, Application Note 14(A), the break-ins.  The Court thus concludes that Gallegos' shotgun possession was not connected with his breaking and entering felony, and that an enhancement under § 2K2.1(6)(B) is not warranted.

**IT IS ORDERED** that (i) the United States' Objection to Presentence Investigation Report, filed July 15, 2016 (Doc. 48), is overruled; and (ii) the Court will not apply a 4-level enhancement to Defendant Trinidad Gallegos' offense level under U.S.S.G. § 2K2.1(6)(B).

                                                            _____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Damon P. Martinez
  United States Attorney
Paul Mysliwiec
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Kari Converse
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorney for the Defendant*